IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Avril Smalls,<br><br>        Plaintiff,<br>  v.<br><br>RE Carroll Management Company,<br><br>        Defendant. | Case No. 2:23-CV-4676-RMG<br><br>**ORDER AND OPINION** |

Before the Court is Defendant's motion for summary judgment. (Dkt. No. 18). Plaintiff filed a response (Dkt. No. 23), and Defendant replied (Dkt. No. 26). For the reasons set forth below, the Court grants Defendant's motion for summary judgment.

**I.    Background**

This suit arises from Plaintiff's claim that she was unlawfully terminated and defamed by Defendant as retaliation for her tracking Fair Housing Act (FHA) violations purportedly committed by Defendant. Plaintiff also alleges she was not paid overtime wages in violation of the Fair Labor Standards Act (FLSA) and South Carolina Payment of Wages Act.

At the time of her termination, Plaintiff worked as the Assistant Property Manager of the Kilnsea Village Apartments. Plaintiff's direct supervisor was Chelsea Black, who in turn reported to Karri Lecki. Ms. Black issued a written warning to Plaintiff on Tuesday, April 19, 2022, citing concerns with Plaintiff's job performance and her personal relationship with a resident of the complex. (Dkt. No. 18-10). Ms. Black subsequently amended the writeup to remove the noted concern regarding Plaintiff's personal relationship with a tenant but retained allegations regarding Plaintiff's moving residents into apartments prior to obtaining payment or signed leases. (Dkt. No. 18-11). In acknowledging her receipt of the amended warning, Plaintiff noted that "[she] did

not agree with anything written within this employee write up" and complained that she had "not been properly trained." (*Id.* at 2). Plaintiff also stated that she ceased talking to her supervisor after receiving the writeup. (Dkt. No. 18-5 at 28:1-3).

In light of the breakdown of Plaintiff and Ms. Black's working relationship following issuance of the written warning, Ms. Leckie attempted to hold a resolution meeting on Friday, April 22, at which point Plaintiff admits "it was clear" that "[she] and Chelsea could not work together." (*Id.* at 46:14-17). Plaintiff sent an email to Ms. Leckie on Sunday, April 24 informing her that she "[did] not feel comfortable returning to the office at this time" and "[would] be taking a mental health break to reset," requesting no "communication with the team at Kilnsea Village Apartments." (Dkt. No. 18-9). Ms. Leckie terminated Plaintiff the next morning. (Dkt. No. 18-5 at 47:23-48:2). Defendant maintains that Plaintiff was terminated from her position due to the "performance issues" noted in the writeup and given Plaintiff's stated refusal to continue working with her supervisor. (Dkt. No. 18-1 at 3-4). Defendant argues that the record is devoid of any evidence to support Plaintiff's claims, and moves for summary judgment on this basis.

**II.     Legal Standard**

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *See id.* Therefore, summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987).

"In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The movant bears the initial burden of demonstrating that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has made this threshold demonstration, the non-moving part must demonstrate specific, material facts exist that give rise to a genuine issue to survive the motion for summary judgment. *See id.* at 324. Under this standard, "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence'" in support of the non-moving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999)).

### III.    Discussion

#### 1.    FHA Retaliation Claim

Plaintiff claims she was terminated from her position as retaliation for making protected complaints under the FHA regarding a tenant's service animal. (Dkt. No. 23 at 11). Plaintiff also claims that she noted other alleged FHA violations by Defendant in a log that she created on her work computer, which could have been visible to Ms. Black and her other coworkers. (*Id.* at 2-3). In Plaintiff's view, Defendant's explanation that she was terminated due to performance issues is pretextual. (*Id.* at 11-13). She argues that her "termination could not have occurred without the writeup," which was the source of the personal issues between her and Black, and "that the writeup itself was part of the ongoing scheme of retaliation for her documentation and opposition to unlawful housing activities." (*Id.* at 12-13).

"To establish a prima facie case of retaliation in contravention of Title VII, a plaintiff must prove '(1) that she engaged in a protected activity,' as well as '(2) that her employer took an

3

adverse employment action against her,' and '(3) that there was a causal link between the two events.'" *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) (quoting *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405–06 (4th Cir. 2005)). "Stated differently, a plaintiff must show that his employer 'took the adverse action because of the protected activity.'" *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 123 (4th Cir. 2021) (quoting *Bryant v. Aiken Regional Med. Ctrs., Inc.*, 333 F.3d 536, 543 (4th Cir. 2003)). "In the context of element one of a retaliation claim, an employee is protected when she opposes 'not only ... actions actually unlawful under Title VII but also . . . actions [she] reasonably believes to be unlawful.'" *Boyer-Liberto*, 786 F.3d at 281 (quoting *Navy Fed. Credit Union*, 424 F.3d at 405-06).

Plaintiff argues that "the close temporal proximity between [her] termination [on April 24, 2022] and her protected activities surrounding Mr. Miller's unlawful pet fees are sufficient to create a causal connection" between the protected FHA activities and her termination, and constitute a prima facie case of retaliation. (Dkt. No. 23 at 11.). The Court disagrees. Per Plaintiff, Mr. Miller was charged pet fees on March 1, 2022 and March 14, 2022, but did not complete a PetScreening application, which the apartment complex uses to verify service animals, until April 12, 2022. (*Id.*). In other words, Mr. Miller had not registered his pet as a service animal at the time he was charged pet fees. Plaintiff presents no evidence that Mr. Miller was charged for his pet after completing the PetScreening application to designate his pet as a service animal. As a result, there was no reasonable basis for Plaintiff to believe Ms. Black had violated the Fair Housing Act at the time of making her complaint. Further, there is no evidence that Ms. Black was aware Plaintiff was maintaining a log of purported FHA violations by Defendant.

4

Even assuming Plaintiff's belief was reasonable and could establish a prima facie case of retaliation, Plaintiff has failed to rebut Defendant's legitimate explanation for Plaintiff's termination. Upon making a *prima facie* case of retaliation, "the burden shifts to the defendant to show a legitimate and non-discriminatory reason for the adverse employment action; and [] if the defendant shows such a reason, then the burden shifts [back] to the plaintiff to prove that the reason is pretextual." *Waters v. Logistics Mgmt. Inst.*, 716 F. App'x 194, 197 (4th Cir. 2018). To rebut Plaintiff's claim that she was fired as a result of her complaint regarding Mr. Miller's pet rent, Defendant cites the April 24, 2022 email from Plaintiff to Ms. Leckie, where Plaintiff relayed that she would not be communicating with anyone on her team. (Dkt. No. 18 at 4 (citing Dkt. No. 18-5)). In Defendant's view, Plaintiff was dishonest regarding the events that had transpired during the resolution meeting, and Defendant made the choice to terminate Plaintiff because "it was clear from Plaintiff's email that Plaintiff could no longer work with Ms. Black," her direct supervisor. (*Id.*). Plaintiff has failed to rebut Defendant's explanation of its reasonable basis for terminating Plaintiff's employment in light of her refusal to communicate with her supervisor and team.

The Court finds that Plaintiff's claim of retaliation under the FHA is unsupported by the record evidence, and grants summary judgment to Defendant on this claim. Because the Court finds that no retaliatory termination took place, Plaintiff's alternative theory of wrongful discharge under the public policy exception to South Carolina's at-will employment doctrine fails as a matter of law.

### 2. SCPWA Claim Unpaid Wages and FLSA Claims

Plaintiff contends that she is owed overtime pay and earned commissions under the South Carolina Payment of Wages Act. (Dkt. No. 23 at 18-19). Plaintiff presents no evidence of any commission that she was owed but not paid. Plaintiff cannot rely on her own conclusory testimony

5

to defeat summary judgment on this claim. *See Strickler v. Waters*, 989 F.2d 1375, 1383 (4th Cir. 1993).

Plaintiff also claims she is owed overtime wages under the Fair Labor Standards Act for cleaning apartments while off the clock. (Dkt. No. 23 at 6). Plaintiff's purported evidence in support of this claim (four time-stamped photos of rugs she allegedly cleaned while off the clock) are directly refuted by Plaintiff's time sheets for the days in question. (Dkt. Nos. 18-15, 18-16). The Court finds that no genuine dispute of material fact exists as to Plaintiff's claims under the SCPWA and FLSA, and grants summary judgment to Defendant on these claims.

### 3. Defamation

Plaintiff claims she was defamed by Defendant's "making false allegations of inappropriate relationships with tenants, by conjuring up fake allegations of misconduct by Plaintiff, by screaming at Plaintiff to sign a disciplinary action, and by unjustifiably terminating Plaintiff's employment in a public manner to suggest that such termination was justifiable" (Dkt. No. 1-1, ¶ 74). Defamation of an individual occurs where "(1) a false and defamatory statement was made; (2) the unprivileged statement was published to a third party; (3) the publisher was at fault; and (4) either the statement was actionable irrespective of harm or the publication of the statement caused special harm." *Fleming v. Rose*, 567 S.E.2d 857, 860 (S.C. 2002). "Defamatory communications take two forms: libel and slander. Slander is a spoken defamation while libel is a written defamation or one accomplished by actions or conduct." *Johnson v. Dillard's Inc.*, No. 3:03-3445-MBS, 2007 WL 2792232, at *17 (D.S.C. Sept. 24, 2007). Slander is "actionable per se" when it charges a plaintiff with "unfitness in one's business or profession." *Johnson v. Duke Energy Corp.*, No. CA 0:13-2967-MBS, 2014 WL 2434630, at *2 (D.S.C. May 29, 2014).

Here, Plaintiff alleges both slander (Defendant's "screaming at Plaintiff to sign a disciplinary action" and "terminating Plaintiff[] . . . in a public manner" as well as gossiping about her with other employees) and libel (via the accusations contained in the written write-up). Plaintiff fails to substantiate these claims with any evidence nor identify with specificity the defamatory statements she claims Defendant made to other employees. *See Harris v. Tietex Int'l Ltd.*, 790 S.E.2d 411, 416 (S.C. Ct. App. 2016) ("Without [Plaintiff] identifying the specific statement or statements on which he bases his claim, we cannot evaluate whether there existed a genuine issue of material fact as to the truth or defamatory nature of the statements."). As to the allegations contained in Plaintiff's written write-up, even assuming such statements were false and defamatory, Plaintiff presents no evidence that the write-up was published to any third party. In light of the absence of a genuine dispute of material fact, the Court grants summary judgment to Defendant on Plaintiff's defamation claim.

### IV.   Conclusion

In light of the foregoing, the Court **GRANTS** Defendant's motion for summary judgment.

**AND IT IS SO ORDERED.**

                                                 s/Richard M. Gergel
                                                 Richard Mark Gergel
                                                 United States District Judge

July 19, 2024
Charleston, South Carolina